UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-14348-CANNON/REID

MARCUS KELLY,

      Petitioner,

v.

FLORIDA DEPARTMENT OF CORRECTIONS,
Ricky D. Dixon, Secretary,[1]

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

This cause is before the Court on Petitioner's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1]. This matter was referred to the Undersigned for a ruling on all pretrial, non-dispositive matters and for a Report and Recommendation on any dispositive matters, pursuant to 28 U.S.C. § 636(b)(1)(B), (C). For the reasons discussed below it is **RECOMMENED** that the Petition be **DENIED**.

## BACKGROUND

Petitioner, Marcus Kelly, is a state prisoner convicted of trafficking cocaine (400 grams or more) and conspiracy to traffic cocaine (400 grams or more). He was sentenced to 25 years in prison. Petitioner now seeks to challenge the constitutionality of his state court conviction.

---

[1] The original Respondent in this case, Mark S. Inch, retired from his position as Secretary of the Florida Department of Corrections. Former Secretary Inch's successor, Ricky D. Dixon, has been automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d) (providing "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). The Clerk's Office is **INSTRUCTED** to make this modification on the docket.

I.      Underlying Offense

According to the facts derived from the hearing on Petitioner's Motion to Suppress, on February 3, 2014, detective Peter Croft and deputy Travis Dykes ("the detectives") conducted an interdiction operation on I-95 in Martin County, Florida. [ECF No. 20-1 at 8:11–23]. The operation employed signs indicating that there was a "narcotics K-9 ahead, [and] all drugs [would be] seized." [EFC No. 20-1 at 9:14]. There was in reality, however, no such K-9 search and seizure set up beyond the signs. [*Id*. at 9:13–15].

During the operation the detectives observed a vehicle come to a complete stop for several minutes on the west shoulder of the highway after passing the sign. [*Id.* at 11]. The vehicle subsequently cut across all three northbound lanes to exit I-95, almost hitting other vehicles in the process. [*Id.* at 11:22–25]. Once off I-95, the detectives witnessed the vehicle roll through a stop sign. [*Id.* at 12:18–24, 40:12–16].   The detectives determined that this gave rise to sufficient reasonable suspicion to stop the vehicle. [Id. at 40:12-16]. Petitioner and his co-defendant Johnathan Ward were in the vehicle [*Id*. at 15].

Upon approach, the detectives noticed the smell of burnt marijuana which constituted probable cause to search the vehicle. [*Id*. at 14, 40]. During the search, the detectives did not find any narcotics in the front interior of the car. [*Id.* at 15, 30, 48]. The detectives, however, noticed the backseats of the vehicle were not evenly aligned. [*Id.* at 25]. Thereafter, another Martin County Sheriff's deputy, arrived at the scene and proceeded to search the backseat of the vehicle. [*Id.* at 15:14–25; 16:1–13; 24:7–25; 25:1–2]. That officer (without the use of a K-9) found hidden cocaine by popping up the back seat of the vehicle without the use of tools; the interior of the vehicle was not damaged by this action. [*Id.* at 56:6–11]. The cocaine was found exclusively in the interior compartment under the backseat of the vehicle. [*Id.*].

The search revealed two large, sealed plastic bags of what appeared to be cocaine. [*Id*. at 16-18]. The detectives took Petitioner and his co-defendant into custody. *See generally* [*Id*.]. While in the backseat of the police vehicle, Petitioner, unaware he was being recorded, asked his co-defendant to take the blame for the contraband because Petitioner's criminal record was much more extensive than his co-defendant's. [ECF No. 20-1 at 148–49]. Following the arrest, the two seized bags of cocaine were designated as "TD1" and "TD2." [ECF No. 19-1 at 177].

II.    State Court Procedural History

Following Petitioner's arrest, the State filed an Amended Information on March 26, 2014, charging him with trafficking cocaine (400 grams or more) and conspiracy to traffic in cocaine (400 grams or more). [ECF No. 19-1 at 8]. Petitioner moved to suppress the evidence seized and statements made on the basis that the warrantless search of the vehicle was an unconstitutional search and seizure. [*Id.* at 10–17]. The trial court concluded the search of the vehicle was supported by probable cause and denied the motion. [*Id.* at 19–22].

On July 6, 2015, Petitioner entered an open plea of no contest for both charges, while retaining the right to appeal the denial of the motion to suppress. [*Id.* at 24–30]. Petitioner, however, just prior to trial moved to withdraw his open plea, which the court denied. [*Id.* at 32–34]. Ultimately, the Court adjudicated Petitioner guilty. [*Id.* at 36–40].

Petitioner appealed the denial of the motion to suppress and motion to withdraw his plea. [*Id.* at 45–88]. The Fourth District Court of Appeals ("Fourth DCA") affirmed without issuing an opinion, and the mandate issued on April 28, 2017. *See Kelly v. State*, 224 So. 3d 235 (Fla. 4th DCA 2017); [ECF No. 19-1. at 133]. On January 10, 2018, Petitioner filed a Fla. R. Crim. P. 3.800(a) motion to correct illegal sentence with the trial court. [ECF No. 19-1 at 135–38]. The

3.800(a) motion was dismissed, and Petitioner's subsequent motion for rehearing was denied on March 15, 2018. [*Id.* at 140–46].

In addition to filing the 3.800(a) motion on January 10, 2018, Petitioner also filed a *pro se* petition with the Fourth DCA , alleging he received ineffective assistance of appellate counsel. [*Id.* at 233–42]. Specifically, Petitioner alleged appellate counsel failed to address relevant precedent when challenging the trial court's denial of the motion to suppress. [*Id.*].  The Fourth DCA denied the petition on December 24, 2019. [*Id.* at 244].

Several months later, Petitioner, through counsel, filed a Fla. R. Crim. P. 3.850 motion for postconviction relief with the trial court. [*Id.* at 148–57]. Petitioner's post-conviction counsel alleged that trial counsel provided ineffective assistance of counsel by failing to: (1) investigate inconsistencies in the lab report as to the weight of the cocaine and the "reasonable probability of tampering"; and (2) challenge alleged inaccurate statements the prosecutor made at sentencing. [*Id.*]. This motion was also denied. [*Id.* at 185–93]. Petitioner appealed the trial court's decision, and the Fourth DCA affirmed without opinion. *Kelly v. State*, 299 So. 3d 1060 (Fla. 4th DCA 2020). The mandate issued on August 7, 2020. [ECF No. 19-1 at 238].

III.   The Instant Petition

Petitioner initiated the instant 28 U.S.C. § 2254 Petition on October 1, 2020. [ECF No. 1]. An Amended Petition was filed on March 18, 2021. [ECF No. 15]. In his initial Petition, the following claims were asserted:

> **Claim 1:** The trial court erred in denying Petitioner's motion to withdraw his no contest plea resulting in the denial of his right to a jury trial.

> **Claim 2:** The trial court erred in denying Petitioner's motion to suppress physical evidence because the search of his vehicle exceeded the permissible scope.

4

**Claim 3:** Appellate counsel provided ineffective assistance by failing to argue the case *U.S. v. Ross*[2] on appeal in opposing the denial of his motion to suppress evidence.

**Claim 4:** Trial counsel displayed deficient performance by failing to investigate and file a motion to suppress potential evidentiary tampering. As a consequence, the state court's denial of petitioner's Rule 3.850 is based on an unreasonable determination of the facts.

**Claim 5:** Trial counsel provided ineffective assistance by failing to challenge statements made by the prosecutor at sentencing.

[ECF No. 1 at 8, 10-13, 15, 17, 19]. In the Amended Petition, Petitioner raised two more claims:

**Claim 6A:** Petitioner's plea was involuntary due to the ineffective assistance of defense counsel and state court coercion.

**Claim 6B:** Plea counsel was ineffective for failing to move to dismiss the trafficking charges.

[ECF No. 15].

## DISCUSSION

### I.    Procedural Requirements and Exhaustion in State Court

### A.  Statutory Tolling Under § 2244(d)(1)(A)-(D)

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs petitions for writ of habeas corpus brought under 28 U.S.C. § 2254. S. 735, 104th Cong. § 102-108 (1996). *See Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998) (per curiam). The AEDPA imposes a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1). Specifically, the AEDPA provides that the limitations period shall run from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2]*United States v. Ross,* 456 U.S. 798 (1982).

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See Id.*

The limitations period is tolled, however, for the time during which a properly filed application for post-conviction or other collateral review is pending in the state court. *See* 28 U.S.C. § 2244(d)(2). Consequently, if Petitioner sat on any claim creating time gaps in the review process, the one-year clock would continue to run. *Kearse v. Sec'y, Fla. Dep't of Corr.*, 736 F.3d 1359, 1362 (11th Cir. 2013).

A review of the record here shows that Petitioner's claims 1 through 5 are timely, but claims 6A and 6B are not. [ECF No. 18 at 4-5]. The Fourth DCA affirmed Petitioner's conviction and issued its mandate on April 28, 2017. [ECF No. 19-1 at 133]. In cases such as this where the criminal defendant pursues a direct appeal without further review from the Florida Supreme Court, the conviction becomes final 90 days after the decision is affirmed. *Chavers v. Sec'y, Florida Dept. of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006).  Therefore, Petitioner's judgment became final on July 27, 2017. This date started the clock for the tolling period. *See* 28 U.S.C. § 2244(d)(1)(B).

Petitioner filed two post-conviction motions that temporarily tolled the one-year period from running. First, Petitioner filed a motion to correct illegal sentencing under Fla. R. Crim. P.

3.800 on January 10, 2018. [ECF No. 19-1 at 135–8]. This was filed 167 days post-conviction and is timely. [ECF No. 18 at 4]. Rehearing for the Rule 3.800 motion was denied on March 15, 2019. [ECF No. 19-1 at 145-6]. Second, on April 26, 2019, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. [*Id.* at 148]. The motion was denied on November 6, 2019.  [*Id.* at 185–91]. On the November 7, 2019, Petitioner appealed the denial of the 3.850 motion to the Fourth DCA. *Kelly v. State*, 299 So. 3d 1060 (Fla. 4th DCA 2020). The order of denial was affirmed on August 7, 2020. [ECF No. 19-1 at 238].

Petitioner filed his Petition raising claims 1 through 5 on October 1, 2020, 222 days after the final judgment, so the claims raised in his initial Petition are timely. [ECF Nos. 1 at 1; 18 at 5]. He submitted his Amended Petition raising claims 6A and 6B on March 18, 2021. [ECF No 15 at 1]. Because the Amended Petition was filed 390 days after the final judgment, claims 6A and 6B are untimely by 25 days. [ECF No. 18 at 5]. Untimely amendments are time-barred under AEDPA, *unless* they "relate back" to the core facts of claims made in the original timely petitions. S. 735, 104th Cong. § 102–108 (1996). For reasons that will be explained, claim 6A meets this standard but claim 6B clearly does not. [ECF No. 18 at 5–6]. Thus, claim 6B is time-barred. [*Id.* at 6].

## B. Exhaustion

In addition to requiring the timely filing of habeas claims, consistent with federal deference to state court determinations, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court, unless he first properly raised the issue in state courts." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (internal quotations omitted). This Court agrees with the State's finding that Petitioner's claims 2 through 6A were exhaustively raised in the state courts. [ECF No. 18 at 7]. Claim 6B, however, was not raised in any state court proceeding, so it is unexhausted. [*Id.*].

7

Claim 1 was also unexhausted because, although it was raised on direct appeal, it was not raised as a federal claim. [*Id.*]. In Petitioner's motion to withdraw his plea, he does not cite any case relying on federal constitutional law, nor does he label his claim as federal. [ECF No. 19-1 at 32–34]. Rather, Petitioner's argument focused on the state court's compliance with Florida Rule of Criminal Procedure 3.170 and the "good cause" standard for withdrawing a plea under Rule 3.170(f). [ECF No. 19-1 at 65–79]. As the State noted

> In *Baldwin*, the Supreme Court held a petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" 541 U.S. at 32. Petitioner failed to cite any case relying on federal constitutional law in his initial brief regarding this claim and did not label the claim federal. Thus, ground one is also unexhausted.

[ECF No. 18 at 7]. Here, claims 2 through 6A are exhausted, so there is no procedural bar. Claims 1 and 6B are unexhausted, so they are procedurally barred. Accordingly, the Court will address the merits of claims 2 through 6A.

## II.     The Analysis of Merits of Petitioner's Claims 2 Through 6A

An analysis of Petitioner's claims 2 through 6A on their merits shows that he is not entitled to federal habeas relief.

"The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 420 (2014).

In reviewing a federal habeas corpus claim, the district court must first identify the last state court decision, if any, that adjudicated the merits of the claim. See *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). A federal court may not grant habeas relief

on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017), *cert. denied Rimmer v. Jones*, 138 S. Ct. 2624 (2018). As a result, the statute imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. See *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States Supreme Court or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts. *Lee*, 726 F.3d at 1192 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "A state court decision involves an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal principle from the relevant Supreme Court decisions 'but unreasonably applies it to the facts of the particular case.'" *Id.* at 1192 (internal quotations omitted).

In sum, to be entitled to federal habeas corpus relief, a petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 1192 (quoting *Harrington*, 560 U.S. at 101–02).

If, however, the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of Petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

Finally, it is well settled that a petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all facts necessary to demonstrate a constitutional violation. See *Fillmore v. Perry*, 163 F. App'x 819, 820 (11th Cir. 2006) (citing *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)).

**A. Claims 2 and 3 Do Not Support a Basis for Habeas Relief Because the Search of Petitioner's Vehicle, and the Scope Thereof Were Constitutionally Permissible, and Petitioner Was Afforded Effective Assistance of Counsel**

In claim 2, Petitioner argues that the probable cause and scope of his stop and search was unlawful, and as a result, the trial court erroneously denied the motion to suppress the evidence. In claim 3, Petitioner contends he was provided ineffective of counsel because of trial counsel's failure to oppose the denial of the motion to suppress. As discussed below, the decisions made by the state courts regarding claims 2 and 3 were based on a reasonable determination of the facts and a reasonable application of the law.

**i. The Detectives Had Probable Cause to Search Petitioner's Vehicle and did not Exceed the Permissible Scope of the Search**

The Fourth Amendment affords individuals protection from unreasonable search and seizure. *United State v. Weaver*, 145 F. App'x 639, 640 (11th Cir. 2005); *see* U.S. Cost. Amend. IV. Law enforcement, however, may conduct a search when there is probable cause to determine illegal conduct is underway. *Id.* "Probable cause exists when under the 'totality-of-the-circumstances … there is a fair probability that contraband or evidence of a crime will be found in

a particular place." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause may be established "where 'the facts and circumstances within [an officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United State*s, 338 U.S. 160, 175–76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). Although probable cause requires more than mere suspicion, an officer need not meet the "standard of conclusiveness and probability as the facts necessary to support a conviction." *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003). Rather, "[w]hether probable cause exists is 'viewed from the standpoint of an objectively reasonable police officer[.]'" *Weaver*, 145 F. App'x at 641 (quoting *United States v. Chanthasoucat*, 342 F.3d 1271, 1276 (11th Cir. 2003)).

In the context of traffic stops, a police officer may stop a vehicle when there is probable cause to believe a violation of the law has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Further, under the "automobile exception" to the warrant requirement, if officers have probable cause to believe a vehicle contains contraband, the officers may search the vehicle without a warrant. *United States v. Ross*, 456 U.S. 798, 822–23 (1982). Just as a "warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search … [t]he scope of a warrantless search of an automobile … is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* at 823–24.

Petitioner argues in claim 2 that since "no marijuana or marijuana paraphernalia was found … nothing of evidentiary value exist[ed] to justify probable cause." [ECF No. 15 at 7–9]. Petitioner appears to contend probable cause requires there to have been actual marijuana or marijuana

paraphernalia present. Based on this rationale, since the detectives did not find any marijuana during their search, the pretext of a burnt marijuana smell was baseless and insufficient probable cause to justify a search of his vehicle. [*Id*.]. This argument, however, is faulty. The smell of burnt marijuana (along with the other circumstances preceding the search) provided sufficient probable cause to search the vehicle. That probable cause does not retroactively become defunct upon the failure to discover actual marijuana.

Petitioner also contends that under *Florida v. Jimeno*, 500 U.S. 248, 248 (1991), the search of his vehicle was too expansive. In *Jimeno*, a detective overheard the defendant arrange a drug transaction on a public telephone and then followed the defendant's car. *Id.* at 250. The defendant ran a red light and was pulled over. *Id.* at 250. The detective asked the defendant for permission to search the vehicle for narcotics, which was granted. *Id*. at 249–50. The detective located cocaine in a closed paper bag on the floor. *Id.* at 250. The defendant argued that consent to search the car did not extend to the closed paper bag. *Id.* at 250. Petitioner argues that *Jimeno* applies to his case because "law enforcement [was] prohibited from conducting the warrantless search of the entire vehicle, i.e. beyond the scope of visually accessible." [ECF No. 15 at 8].

Petitioner appears to misconstrue *Jimeno*. First, the defendant in *Jimeno* based his argument on the permissible scope of his consent. Here, Petitioner never granted the detectives consent to search the vehicle. Moreover, *Jimeno* supports the scope of the search of Petitioner's vehicle. The *Jimeno* court opined that it is "reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs." *Id* at 1804 (citation omitted). Accordingly, under *Jimeno* it was reasonable for the detectives to search all parts of the interior of Petitioner's vehicle for narcotics because there was probable cause to do so.

Here, detectives observed Petitioner pull over to the side of the road just before the supposed narcotics interdiction area, then cut across multiple lanes of traffic in what appeared to be an attempt to evade the drug interdiction operation. After the detectives observed Petitioner commit a traffic violation, they pulled over the vehicle. Upon approach, the detectives smelled burnt marijuana. Under the totality-of-the-circumstances, this provided sufficient probable cause to search the interior of Petitioner's vehicle for narcotics. Moreover, the scope of the search was not overly expansive, because the entirety of the interior of the vehicle, including the area behind the backseats, could contain evidence of the use of marijuana. That cocaine, rather than marijuana, was discovered does not mean the search was no longer supported by probable cause. Therefore, the trial court did not err in denying Petitioner's motion to suppress evidence.

Petitioner argues in claim 3 that *United States v. Ross*, 456 U.S. 798 (1982), also supports his claim that the scope of the search was too expansive. Again, Petitioner misconstrues the case law. In *Ross*, an officer was notified that the defendant was selling drugs from his car, so the officer pulled the defendant over. 456 U.S. at 800. During a search of the vehicle, the officer found a closed paper bag with white powder and a zipped pouch containing cash in the trunk. *Id*. In upholding the scope of the search, the Supreme Court noted that "the scope … is defined by the object of the search and the places where there is probable cause to believe it may be found." *Id.* at 824.  Here, Petitioner argues that the smell of burnt marijuana as probable cause dictates that the scope of the search should be confined to the passenger compartment of the vehicle. [ECF No. 15 at 10].  Petitioner contends that the smell of burnt (as opposed to raw) cannabis would justify only the search of the vehicle's ashtray or the passengers' compartment in the front of the vehicle. [ECF No. 15 at 10]. In *Ross*, however, the Supreme Court held that if a warrantless search of a vehicle is supported by probable cause "it justifies the search of every part of the vehicle and its

contents that may conceal the object of the search." 456 U.S. at 825. As the state court noted, there is no reason to believe that any marijuana would be found only in the front compartment of the vehicle. Burnt marijuana can be stored, or hidden, in any part of the vehicle's interior, including under or behind the seats. Accordingly, a search of the entirety of the vehicle's interior was justified.

As Respondent notes, both *Jimeno* and *Ross* support the scope of the search in this case. Taken together, they show that once the search of a vehicle is authorized (with consent or probable cause), an officer can search any part and any container within the vehicle that may contain the object of the search. The Undersigned finds that the decisions made by the state trial and appellate courts regarding claim 2 were reasonable and aligned with federal law.

### ii.     Petitioner was not Deprived of Effective Assistance of Counsel Because of his Counsel's Purported Failure to Advance *Ross* in the Motion to Suppress

An ineffective assistance of counsel claim raised in a § 2254 petition turns on whether the state court reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). "To succeed on an ineffective-assistance claim under *Strickland*, the § 2254 petitioner must show that his Sixth Amendment right to counsel was violated because (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense." *Thomas v. Sec'y, Dep't of Corr.*, No. 17-11357-B, 2018 WL 11303563, at *4 (11th Cir. July 31, 2018) (citing *Strickland*, 466 U.S. at 687, 697). Importantly, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690A § 2254 petitioner must establish prejudice through demonstrating by a "reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694.

14

"Because judicial review of counsel's performance already 'must be highly deferential,' a federal habeas court's review of a state court decision denying a *Strickland* claim is 'doubly deferential.'" *Thomas*, 2018 WL 11303563, at *4 (citing *Cullen v. Pinholster*, 653 U.S. 170, 189–90 (2011)). "In sum, the pertinent inquiry under § 2254(d) 'is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.* (internal quotations and citation omitted).

In the instant case, Petitioner erroneously contends in claim 3 that his appellate counsel's failure to advance *Ross* in his ineffective assistance of counsel claim before the Fourth DCA as a basis to support the motion to suppress constitutes ineffective assistance of appellate counsel. [ECF No. 15 at 10]. Petitioner's trial counsel did refer to *Ross* in the motion to suppress. [ECF No. 19-1 at 10–17]. In the motion to suppress, trial counsel argued that under *Ross* "the smell of burnt cannabis, without additional circumstances, would limit [the search] to the [parts of the] interior of the vehicle … in which there is probable cause to believe that burnt cannabis may be found." [*Id.* at 12]. Counsel appears to have diligently contested the search of Petitioner's vehicle. In fact, the state court found *Ross* supported the scope of the search, and therefore denied the motion to suppress. The state court's rejection of the argument does not render Petitioner's appellate counsel's services ineffective. *See Strickland*, 466 U.S. at 686, (noting the standard to judge ineffective assistance of counsel "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). Petitioner contended that had his appellate counsel "fully developed the argument" the court would have remanded the case and instructed the trial court to "discharge Mr. Kelly." [ECF No. 19-1 at 241]. Petitioner simply misapprehends the case's holding. Regardless of whether appellate counsel argued *Ross* supported the suppression of the evidence, there was no reasonable

probability of success on appeal. Under *Ross*, the warrantless search of the car for drugs could have reasonably included the interior of the car, including an area of the backseat that was reached by simply moving the latch that revealed the area behind or under it.

Rather, it appears defense counsel raised appropriate arguments and was diligent in his defense of Petitioner. Simply put, nothing Petitioner asserts in claim 3 comes close to overcoming the tremendous deference afforded to the state court's denial of a *Strickland* claim or the strong presumption counsel rendered adequate assistance.

Therefore, the Undersigned concludes Petitioner's request for habeas relief should be denied as to claims 2 and 3.

### B. Claims 4 and 6A

In claim 4, Petitioner argues that his counsel was ineffective in failing to investigate and suppress possible evidentiary tampering. [ECF No. 15 at 12]. In claim 6A, Petitioner contends that his plea was involuntary because he received ineffective assistance of counsel on this issue. [*Id*. at 26]. For the reasons stated below, both of these related claims are meritless.

Petitioner's tampering argument is based on differences in the recorded weight of the seized narcotics between the sheriff's department and later laboratory reports. [*Id.* at 14]. He maintains his counsel should have further investigated and moved to suppress the cocaine based on these discrepancies. [*Id.* at 12].

The record shows that when the two bags of cocaine were initially seized in February of 2014, the Martin County Sheriff's Office reported the first bag, TD1, was "approximately 492g [of] cocaine." [ECF No. 19-1 at 177]. The Indian River Crime Laboratory prepared an initial laboratory report on March 12, 2014. [*Id*. at 178]. The report described TD1 as a "sealed plastic bag containing two layers of sealed plastic bags (with green detergent liquid in between) with 15

plastic bags of chunks, white powder" that weighed "net: 419.45 grams." [*Id*. at 178]. The Indian River Crime Laboratory prepared a second report on June 30, 2015. In this report, the cocaine in TD1 weighed "net: 417.96 grams." [*Id*. at 181]. TD1's reported weight decreased by 72.55 grams from the Sheriff's Office report to the laboratory's first report. Further, TD1 decreased another 1.49 grams between the first and second laboratory reports.

There were similar discrepancies in the weight of TD2. The Sheriff's Office reported TD2 was "approximately 393g [of] cocaine" in February 2014. [*Id*. at 177]. The first Indian River Crime Laboratory report on March 12, 2014, described TD2 as "[a] sealed plastic bag containing three layers of sealed plastic bags (with green detergent liquid leaking into all layers) with 11 plastic bags of chunky, white powder". [*Id*. at 178]. The Report noted "[o]nly one bag was analyzed with a net weight of 28.05 grams of [c]ocaine. The total gross weight of the remaining 10 bags was 292.42 grams." [*Id*. at 179]. Thus, the total weight of TD2 was 320.47 grams according to the first laboratory report. [*Id*. at 179]. The June 30, 2015, Laboratory Report again noted with respect to TD2 that only one of the smaller bags was tested. [*Id*. at 181]. It weighed 28.15 grams. [*Id.*]. The remaining 10 bags had a gross weight of 303 grams. [*Id*. at 181]. The total weight of TD2 was 331.15 grams in the second laboratory report. The tested TD2 bag had increased in weight by .10 grams from laboratory report one to report two.

In Petitioner's motion for post-conviction relief, he speculates that the evidence was tampered with. He opines that "the second laboratory report did not indicate that … each of the small bags of alleged cocaine originally contained within TD1 were separately tested for actual cocaine." [ECF No. 19-1 at 151]. He further implies that weighing the aggregate content of the smaller bags required the evidence to be comingled. [*Id*.]. Petitioner then raises the issue of discrepancies in the weight of the evidence across different testing periods, and emphasizes that

his counsel did not take depositions of the people who weighed the evidence. [*Id.*]. Petitioner claims counsel's failure to move to suppress the evidence meets the *Strickland* standard for ineffective assistance of counsel. [ECF No. 15 at 12–17]. He maintains that the trial court's denial of his Rule 3.850 application where he raised this issue was based on an unreasonable determination of the facts. [*Id.*]. Petitioner argues in claim 6A that this purported ineffective assistance of counsel rendered his plea involuntary. [*Id.* at 24].

Petitioner's claims do not entitle him to relief. First, according to the trial court, Petitioner "was aware of the alleged tampering issues and the fact that counsel had not taken depositions of individuals involved in weighing the evidence at the time he decided to enter an open plea." [ECF No. 19-1 at 186]. The record confirms Petitioner was aware that he was waving his rights to challenge the evidence:

> The Court: Do you understand that by entering this plea, that you're giving up the right to file any more motions about your case? You can't challenge any more evidence, you can't challenge the way the police acted, you can't challenge anything whatsoever beyond what you already put on the record. Do you understand that?
> Petitioner: Yes sir.
> The Court: Do you understand that the only thing you could challenge is if I gave you an illegal sentence or if you want to challenge your attorney for his representation under 3.850, do you understand that?
> Petitioner: Yes sir.
> The Court: Have you had time to talk to your attorney about what we're talking about right now?
> Petitioner: Yes sir.

[ECF No. 20-1 at 139:8–22]. It is clear Petitioner understood the implications of his open plea before agreeing to it. The trial court made a reasonable determination by denying Petitioner's motion for post-conviction relief.

Second, the findings by the trial court and the State that the discrepancies in evidence do not meet the standard for probable tampering are supported by the record. In the case of TD1, the

cocaine was stored in 15 small bags. [*Id*. at 178]. The 15 small bags filled with cocaine were contained in a larger plastic bag, which itself was enveloped in a green liquid (detergent) within another plastic bag. [*Id*.]. When the sheriff's office initially weighed the seized cocaine, it appears to have weighed the actual cocaine in its original packaging. Petitioner's counsel acknowledged as much:

> Prosecutor: Are you familiar with how the Sheriff's Office weighs their drugs?
> Mr. Vasko: They - at the scene they weigh them altogether and that's how in most arrest affidavits they weigh everything in its - in its packaging.
> Prosecutor: Okay, so it's the packaging weight that's added?
> Mr Vasko: Yes, I believe so.

[ECF No. 20-1 at 237:12–18]. This information explains the discrepancy between the different weights reported by the sheriff's office and the laboratory. This comports with the State's assertion that "clearly when the lab weighed TD 1, it weighed only the white chunky substance in the bags. The lab would not have weighed all of the plastic bags or green detergent to determine the weight of illegal drugs (Ward) possessed." [ECF No. 19-1 at 151]. The Court concluded that the laboratory reports measured the weight of the cocaine itself rather than other extraneous materials associated with its storage. [ECF No. 19-1 at 178].  Further, the weight discrepancies between laboratory report one to report two were so negligible as to fall within the margin of error. These same explanations apply for the changes in weight of TD2 across testing periods.

In Florida "to demonstrate probable tampering, the party attempting to bar the evidence must show that there was a probability that the evidence was tampered with—the mere possibility is insufficient." [ECF No. 18 at 29–30] (citing *Armstrong v. State*, 73 So. 3d 155, 171 (Fla. 2011)).

As Respondent notes, Petitioner "makes the barebones conclusory allegation that there was no explanation for the differences in the weights of the exhibits." [ECF No. 19-1 at 163]. There is, however, no evidence to indicate that the tampering claim is more than a "mere possibility." [ECF

No. 19-1 at 164-65]. When on the first day of trial Petitioner moved to discharge his attorney and represent himself, Petitioner addressed the trial court claiming the fact that the weight of the cocaine had changed showed that the bags had been tampered with and that the bags had been improperly combined [*Id*.]. The prosecutor explained that: (1) TD1 had been tested and weighed twice because the chemist who had originally tested the drugs was no longer employed by the laboratory; and (2) only one of the small bags in TD2 had been weighed and tested because the state only needed to prove that Petitioner had possessed more than 400 grams. [*Id.*]. Once the statutory weight was reached, the laboratory did not test any of the remaining bags in TD2. [*Id*.]. The post-conviction court agreed with the States' argument that Petitioner's counsel reasonably concluded that a motion to suppress regarding the discrepancies in evidence would have failed. [ECF No. 19-1 at 186-89]. The post-conviction court also emphasized that after that discussion, Petitioner agreed to plead guilty knowing that he had waived the right to further pursue his claims of evidence tampering. [ECF No. 19-1 at 188-91]. Given these facts, the post-conviction court cannot be said to have erred in denying Petitioner's 3.850 motion for post-conviction relief.

Furthermore, Petitioner is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" to prevail on a 3.850 claim. *Strickland*, 466 U.S. at 694. Here, the lightest weight assigned to TD1 was 417.96 grams from the second laboratory report. [ECF No. 19-1 at 181]. Petitioner was charged with trafficking cocaine 400 grams or more. [ECF No. 15 at 1]. Because the weight of TD1 alone significantly exceeded the threshold of the charges, it is unlikely that the outcome of the sentence would have been different with different counsel.

Pertinently, counsel's strategy to seek a plea, which Petitioner agreed to, rather than contest a readily reconcilable discrepancy in the weights assigned to the cocaine does not constitute

ineffective assistance of counsel. This exercise of professional judgment is well within the normative bounds of competency expected of a criminal defense attorney and does not rise to the level of an abdication of professional judgment sufficient to overcome the strong presumption that adequate assistance had been rendered.

Notably, the same conclusion would apply to Petitioner's Claim 6B. Although the claim need not be reviewed by this Court because it was both unexhausted and time-barred,[3] his contention that trial counsel should have moved to dismiss the charges against him because of the laboratory's "commingling the substance before testing and weighing (TD1), and the failure to chemically test each individual bag of chunky powder contained in the 26 bags collected from both TD1 and TD2" [ECF No. 15 at 27-28], fails the *Strickland* test. The state maintained that the bags had not been commingled before they were tested. [ECF No. 19-1 at 164-65]. The laboratory reports specify that the substance tested was cocaine and show that TD1 alone exceeded 400 grams of cocaine [ECF No.19-1 at 178-181]. Both laboratory reports specifically state that the laboratory tested and weighed only one of the small bags in TD2. As such, the laboratory report identified the "net" weight of "cocaine" in both bags was at a minimum, 417.96 grams in TD1 and 28.05 grams in TD2. [*Id.*]. On this record, Petitioner's speculation that the bags somehow contained some substance other than cocaine or perhaps in addition to cocaine and that the trial court would have dismissed the charges had his trial counsel deposed the laboratory chemists, does not satisfy *Strickland*.

---

[3] To the extent Petitioner contends that the narrow exception in *Martinez v. Ryan*, 566 U.S. 1 (2012), excuses his procedural default of his claim of ineffective assistance of trial counsel, it cannot be used to excuse ineffective assistance of post-conviction counsel. *Shinn v. Ramirez*, 596 U.S. __, 2022 WL 1611786 (May 23, 2022). Nor can it revive a time-barred claim.

Consequently, the Undersigned finds counsel's performance did not affect the outcome of the proceeding in a manner that violated *Strickland* or Petitioner's constitutional right to effective assistance of counsel.

## C.  Claim 5

In claim 5, Petitioner avers that counsel provided ineffective assistance at the sentencing hearing because he did not sufficiently advocate on his behalf. [ECF No. 15 at 19]. Petitioner claims counsel failed to object to inaccurate statements made by the prosecutor regarding the culpability of Petitioner's co-defendant. [*Id.*]. When discussing the co-defendant, the court asked the prosecutor the length of co-defendant's sentence. [ECF No. 20-2 at 38:13–16].  The record is as follows:

> Prosecutor: His sentence was ten years. He was the courier. He was not the – he was getting paid to make the trip.
> The Court: Do you happen to have a ScoreSheet on him?
> Prosecutor:…that was a part of the discussion in the back seat of the patrol car between [Petitioner] and [co-defendant]. [Petitioner] was trying to get [co-defendant] to take the rap so to speak because [Petitioner], [co-defendant] barely had anything.
> …
> The Court: His ScoreSheet reflected – two misdemeanors and one felony driving charge.
> Prosecutor: Right.
> The Court: Okay. I understand. Okay. And the minimum mandatory there was a –
> Prosecutor: I let him plea to a lesser which would have been a seven year minimum. He received ten years with a seven year minimum mandatory.
> The court: Okay. Thank you.
> Prosecutor: And again, it was for his role in the deal so to speak.

[*Id.* at 38:17–40:7]. Petitioner argues that by describing his co-defendant simply as a "courier" the prosecutor intimated the co-defendant was less culpable. [ECF No. 15 at 19]. Petitioner further contends the act of asking his co-defendant to take responsibility for the narcotics does not mean Petitioner is more culpable. [*Id.*]. Petitioner claims that his counsel should have objected to the prosecutor's characterization of his role and relative culpability. [*Id.*].

22

Petitioner further argues that the prosecutor's statements regarding the relative culpability of the Petitioner and co-defendant contradicted the facts as they are presented in the record. In a previous hearing the prosecutor said:

> Judge, the only thing I would add is that in their statements in the backseat of the patrol car after they've been arrested, both [Petitioner and co-defendant] are having a conversation and the jury would have heard the conversation or at least certain details of the conversation regarding the fact as to who should take the blame. Specifically, the [Petitioner] standing before you was telling [co-defendant] that he should take the blame since [Petitioner's] record was far worse. There was further discussion amongst the two as to whose fingerprints would be found on the baggies containing the cocaine. And on top of that, [co-defendant] had indicated that while he was the driver, he was going to receive payment upon arrival in Tallahassee where the delivery was to take place. The evidence would have been that the two were working in conjunction with one another, not only possessing the cocaine, but they were also going to be delivering the cocaine.

[EFC No. 20-1 at 148–49]. Petitioner contends his co-defendant was more than just a courier because he, like Petitioner, was expected to receive payment. [ECF No. 15 at 19].  Moreover, the general nature of the Prosecutor's remarks supports the Petitioner's claim that co-defendant's role was comparable to his own. [*Id*].

Petitioner believes that his co-defendant is equally culpable for the crime and, as such, he argues he should receive a sentence that is comparable to his co-defendant. [ECF No. 15 at 19]. Petitioner argues that his co-defendant's sentence of 10 years (with a mandatory minimum of 7 years) is not comparable to Petitioner's 25-year sentence (with a mandatory minimum of 15 years). [*Id*.]. Additionally, Petitioner argues that the court misconstrues his acceptance of a greater sentence to mean acceptance of greater culpability. [*Id*.]. Based on the foregoing, Petitioner contends that defense counsel's failure to challenge this notion was so prejudicial that it rises to the level of ineffective assistance of counsel. [*Id*. at 20].

This Court is not persuaded by Petitioner's characterization of the prosecutor's remarks. Respondent notes that:

> The prosecutor did not suggest that Petitioner was more culpable than [co-defendant] in the transportation of the cocaine itself; rather, the prosecutor represented that Petitioner attempted avoid culpability by trying to convince [co-defendant] to take all the blame for the cocaine. Because [co-defendant] did not try to avoid responsibility and had less of a prior record, the prosecutor offered [co-defendant] a plea to a lesser offense.

[ECF No. 18 at 33]. The Court concurs with the State's remarks and finds that Petitioner's claims lack merit.

Moreover, the post-conviction court's determination that Petitioner could not establish prejudice because his criminal record was more extensive and more serious than his co-defendant was not contrary to, or an unreasonable application of, clearly established Federal law or based on an unreasonable determination of the facts. Petitioner cannot demonstrate that if counsel had objected to the prosecutor's statements, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 104. Based on Petitioner's criminal record of "Robbery with a Deadly Weapon, Aggravated Assault with a Firearm, three Sales of Cocaine, and other Possessions of Cocaine," the prosecutor requested that the court "sentence the [Petitioner] to each count concurrently thirty years." [ECF No. 20-2 at 23–4]. Petitioner's prior convictions and attempt to avoid culpability are the factors that influenced his sentencing. Petitioner has presented nothing to support a claim that had counsel objected to these comments the outcome of his sentencing would have been different. Nor was counsel's failure to do so such a deviation from the acceptable norm of behavior of a criminal defense attorney to render that failure as violative of *Strickland*. Consequently, the Undersigned concludes that Petitioner's request for habeas relief based on claim 5 should be denied.

**<u>Evidentiary Hearing</u>**

To the extent that Petitioner requests an evidentiary hearing on the merits of his claims, the request should be denied. In deciding whether to hold an evidentiary hearing "a federal court must consider whether such a hearing could entitle an applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Because the applicant would not be entitled to habeas relief, the court is not required to hold an evidentiary hearing.

**IX. Recommendations**

Based on the above, it is **RECOMMENDED** that Petitioner's Federal Habeas Petition [ECF No. 1] be **DISMISSED** as on the merits as to claims 2, 3, 4, 5, and 6A, and as procedurally barred as to claims 1 and 6B, and that the case be **CLOSED**.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 10th day of June, 2022.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:     **United States District Judge Aileen M. Cannon**

    **Marcus Kelly**
    **L04838**
    **Florida State Prison-West Unit**
    **Inmate Mail/Parcels**

**PO Box 800**
**Raiford, FL 32083**
**PRO SE**

**All Counsel of Record**